IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Kelsey Smith, | |
| *On behalf of herself and those similarly situated,* | Case No. 2:20-cv-03064 |
| Plaintiff, | Judge James L. Graham |
| v. | Magistrate Judge Kimberly A. Jolson |
| Local Cantina, LLC, *et al.*, | |
| Defendants. | |

MOTION TO SEND NOTICE OF ACTION TO SIMILARLY SITUATED EMPLOYEES

Pursuant to 29 U.S.C. § 216(b), Plaintiff Kelsey Smith moves this Court for an Order authorizing her to send a notice of the pendency of this action to her similarly-situated co-workers, informing them of their right to join the action to assert Fair Labor Standards Act claims. Specifically, Plaintiff seeks to notify the following two groups of employees:

> All current and former tipped employees employed by Defendants in the State of Ohio between June 15, 2017 and the date of final judgment in this matter, who worked in Local Cantina locations where tips left on online orders were not distributed in whole or in part to servers and bartenders, (the "Pre-May 2020 FLSA Subclass").

> All current and former tipped employees employed by Defendants in the State of Ohio between May 12, 2020 and the date of final judgment in this matter (the "Post-May 2020 FLSA Subclass").

1

As set forth in the accompanying memorandum, this action meets each of the prerequisites for sending notice to these employees. Accordingly, Plaintiff respectfully asks that the Court grant this Motion.

Respectfully submitted,

/s/ Phil Krzeski
Andrew R. Biller (Ohio Bar # 0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)
Philip J. Krzeski (Ohio Bar # 0095713)
Louise M. Roselle (Ohio Bar # 14844)
Nathan J. Spencer (Ohio Bar # 0092262)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
*lroselle@billerkimble.com*
*nspencer@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

2

## Memorandum in support of Motion to Send Notice[1] to Similarly Situated Employees

### 1. Introduction

This is a wage and hour action on behalf of restaurant workers at Defendants' Local Cantina locations in the Columbus, Ohio area. *See* Doc. 2. Plaintiff and eleven other workers have filed consent-to-join forms with the Court since the filing of the Complaint. *See, e.g.,* Doc. 1-2. Plaintiff asks the Court to authorize her to provide notice of this action to all other similarly situated workers.

### 2. Factual and Legal Background

At its core, this case is about Defendants stealing tip money and not paying overtime wages. What makes the case particularly interesting is that some of the tip theft occurs in the context of what appears to be an attempt to manipulate the Paycheck Protection Program ("PPP"), an emergency program meant to keep businesses afloat during the COVID-19 pandemic.

As described below, Plaintiff suggests dividing the similarly-situated workers into two subclasses. The division is based on Defendants' change in pay practices, implemented in May of

---

[1] Even though this type of Motion is often called a "Motion for Conditional Certification," the term "conditional certification" is a misnomer. *Essex v. Children's Place, Inc.*, No. CV15-5621, 2016 WL 4435675, *4 (D.N.J. Aug. 16, 2016). Conditional certification of an FLSA matter does not produce a class with independent legal status and is not necessary "for the existence of a representative action under the FLSA." *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011) ("*Symczyk* I"). Rather, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Symczyk v. Genesis Healthcare Corp.*, 133 S. Ct. at 1530 (internal quotations omitted) ("*Symczyk II*"). Accordingly, Plaintiff moves to send notice to similarly situated employees through this Motion.

2020. Thus, the subclasses are divided between two time periods: pre-May 2020 and post-May 2020.

During the pre-May 2020 time period, Defendants retained tips that customers left for employees when making online orders. Exhibit A, Kelsey Smith Declaration, ¶¶ 27-28; Exhibit B, Mariah Cooper Declaration ¶¶ 26-27; Exhibit C, Roni Bair Declaration, ¶ 26; Exhibit E, Elizabeth North Declaration, ¶¶ 26-27; Exhibit F, Megan Sayre Declaration, ¶¶ 24-25; Exhibit G, Matthew Meade Declaration, ¶¶ 24-25; Exhibit H, Sarah Gross Declaration, ¶¶ 23-24; Exhibit I, Rachel Merrill Declaration, ¶¶ 26-27; Exhibit J, Clare Lahey Declaration, ¶¶ 19-20; Exhibit K, Abigail Mitchell Declaration, ¶¶ 24-25; Exhibit L, Scott Baker Declaration, ¶ 26. At the same time, Defendants paid those employees—servers and bartenders—a tipped wage rate.

This practice violates the FLSA, which forbids employers from paying a tipped wage to employees unless those employees are permitted to retain all of their tips. 29 U.S.C. § 203(m)(2)(A)(ii). Moreover, regardless of the wage rate, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). "Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

On May 12, 2020, however, things changed.

On information and belief, at about that time, Defendants received money from the Paycheck Protection Program. Decl. Smith ¶ 8; Decl. Gross, ¶ 11; Decl. North, ¶ 12. As the

Court is aware, the "Paycheck Protection Program is a loan designed to provide a direct incentive for small businesses to keep their workers on their payroll."[2] A key feature of the Program is that the "SBA will forgive loans if all employees are kept on the payroll for eight weeks and the money is used for payroll, rent, mortgage interest, or utilities." *Id.*

Under the Program, the loan is forgiven if the employer uses it to pay employees. *Id.* But, of course, that means the employer does not keep the money. *Id.*

On May 12, 2020, Defendants required servers and bartenders (the "tipped workers") to agree to a new, temporary compensation structure. This change is reflected on the "agreement" Defendants required their tipped workers to sign. Exhibit M, Smith Agreement; Exhibit N, Cooper Agreement. In sum, Defendants switched the tipped workers to a $1,000 per week "salary," but Defendants required the servers to "agree" that Defendants could retain all tip money.[3] In practice, Defendants retained all credit card tips, but not cash tips.

Plaintiff speculates that this may be Defendants' attempt to pay out the PPP money, thus making the loan forgivable, and then receive the money back in the form of customer tips. Defendants specifically warned the tipped employees not to let customers know what it was doing. Decl. Smith, ¶ 14; Decl. Cooper, ¶ 12; Decl. Boswell, ¶ 13.

Although Defendants' conduct raises questions as to their intent, in the end, it does not matter to this case. Keeping employee tips unquestionably violates the FLSA. 29 U.S.C. § 203(m)(2)(B).

Defendants also apparently decided that if they were paying a "salary," they might as well require the tipped workers to work more hours. No additional compensation was given for

[2] *See* https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program (accessed 6/19/20)
[3] Mariah Cooper received $1,100 per week, regardless of the hours she worked. Decl. Cooper, ¶ 21.

hours worked in excess of forty. Exhibit D, Evan Boswell Declaration, ¶¶ 7-9; Decl. Smith, ¶¶ 20-23; Decl. Cooper, ¶¶ 13, 20-23; Decl. Bair, ¶¶ 19-22; Decl. North, ¶¶ 13, 21-23; Decl. Lahey, ¶¶ 9, 14-15; Decl. Sayre, ¶¶ 15, 20-21; Decl. Meade, ¶¶18, 20-21; Decl. Gross, ¶¶ 13, 19-20; Decl. Mitchell, ¶¶ 18-22; Decl. Merrill, ¶¶ 20-23; Decl. Baker, ¶¶ 18, 20-22. This, too, violates the FLSA. 29 U.S.C. § 207.

Through this Motion, Plaintiff seeks to take the first step in protecting the rights of her fellow employees—by sending them Court-approved notice of this action and letting them decide whether to seek unpaid wages under the FLSA. Plaintiff seeks designation as a representative of the following FLSA collective action classes:

> All current and former tipped employees employed by Defendants in the State of Ohio between June 15, 2017 and the date of final judgment in this matter, who worked in Local Cantina locations where tips left on online orders were not distributed, in whole or in part, to tipped employees (the "Pre-May 2020 FLSA Subclass").

> All current and former tipped employees employed by Defendants in the State of Ohio between May 12, 2020 and the date of final judgment in this matter (the "Post-May 2020 FLSA Subclass").

As described below, Plaintiff far exceeds the "modest" showing she must make to prevail on this motion. *Castillo v. Morales*, 302 F.R.D. 480, 486 (S.D. Ohio Sept. 6, 2014). Through the allegations in the Complaint, the declarations of Plaintiff and fellow opt-ins, and Plaintiff's employment documents, Plaintiff has demonstrated that Defendants subjected all putative class members to a unified policy that violates the FLSA. Accordingly, Plaintiff asks that the Court authorize Plaintiff to send notice of a collective action under the FLSA.

### 3. The Parties

Defendants operate Mexican restaurants in the greater Columbus area. The restaurants are generally known as the Local Cantina. These locations are owned and operated through

various limited liability corporations named in the First Amended Complaint. Doc. 2 at ¶¶ 18-32. Defendant George Tanchevski owns or has owned Defendants' Local Cantina locations during the relevant time period. *See* Decl. Smith, ¶ 5; Decl. Cooper, ¶ 6; Decl. Bair, ¶ 4; Decl. Boswell, ¶ 5; Decl. North, ¶ 8; Decl. Sayre, ¶ 8; Decl. Meade, ¶ 4; Decl. Gross, ¶ 4; Decl. Merrill, ¶ 6; Decl. Lahey, ¶ 6; Decl. Mitchell, ¶ 7; Decl. Baker, ¶ 4.

The proposed FLSA collective action consists of two sub-classes of tipped employees who worked at Defendants' Local Cantina locations at any time during the three years preceding the filing of the Complaint. The subclasses are divided by when the individual employees worked—pre-May 2020 or post-May 2020.

Plaintiff Kelsey Smith is a representative member of both subclasses because she worked as a server and bartender at Defendants' Local Cantina location in German Village during the both relevant time periods and was subject to each of the FLSA violations discussed herein. *See* Decl. Smith at ¶ 4.

## 4. Law and Argument
### 4.1. Legal Standard to Send Notice of a Collective Action

Section 216(b) of the FLSA empowers Plaintiffs to maintain an action for unpaid wages on behalf of themselves and similarly situated employees:

> An action to recover the liability prescribed [under the FLSA] may be maintained against one employer in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to [a class] action unless he gives consent in writing to become such a party and such consent is filed in the court in which the action is brought.

29 U.S.C. § 216(b).

Before a similarly situated employee may become a party plaintiff to this lawsuit for purposes of their FLSA claims, he or she must file a written consent with the Court. *Id*. This distinct "opt-in" structure heightens the need for employees to "receiv[e] accurate and timely notice concerning the pendency of the collective action." *Hoffman La-Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The statute therefore vests district courts with "discretion to implement 29 U.S.C. § 216(b)…by facilitating the notice to potential plaintiffs." *Id*. at 169.

The FLSA does not define "similarly situated" and neither does the Sixth Circuit. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009). "But notably, plaintiffs seeking to certify a collective action under the FLSA face a lower burden than plaintiffs seeking class certification under Federal Rule of Civil Procedure 23." *Myers v. Marietta Mem. Hosp.*, 201 F.Supp.3d 884, 890 (S.D. Ohio Aug. 17, 2016) (citing *O'Brien*). The Sixth Circuit uses a two-stage certification process to determine whether a proposed group of plaintiffs is "similarly situated." *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012).

"First, at the 'initial notice' stage, before discovery has occurred, the Court determines whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members." *Smith v. Generations Healthcare Servs. LLC*, No. 2:16-cv-907, 2017 WL 2957741, *2 (S.D. Ohio Jul. 11, 2017). For Plaintiff to prevail at the initial notice stage, she must only make a "modest factual showing" that she is similarly situated to the putative class—a "fairly lenient standard" that "typically results in conditional certification of a representative class." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)). "Although the Sixth Circuit has declined to 'create comprehensive criteria for informing the

similarly situated analysis,' it has held that FLSA plaintiffs may proceed collectively in cases where 'their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Smith*, 2017 WL 2957741, *3 (citing *O'Brien*). At the first stage, the Court "does not generally consider the merits of claims, resolve factual disputes, or evaluate credibility." *Myers*, 201 F.Supp.3d at 890.

The second stage of the FLSA collective action analysis occurs once discovery is complete, when defendants can move to decertify the action. *Id*. It is at this stage where the Court considers: "(1) the factual and employment settings of the individual plaintiffs, (2) the different defenses to which the plaintiffs may be subject to on an individual basis, and (3) the degree of fairness and procedural impact of certifying the class as a collective action." *Fenley v. Wood Group Mustang, Inc.*, 325 F.R.D. 232, 242 (S.D. Ohio 2018). Arguments regarding "individualized inquiries and defenses go to the merits of Plaintiff's claims, and are more appropriately raised at the decertification stage." *See Thomas v. Papa John's Int'l, Inc.*, No. 1:17-cv-411, 2019 WL 4743637, *3 (S.D. Ohio Sept. 29, 2019).

Because Plaintiff's Motion addresses the first stage, the Court's analysis should be limited solely to whether Plaintiff and putative class are "similarly situated" with respect to Defendants' tip and overtime policies. *See, e.g., Myers*, 201 F.Supp.3d at 890. The Court should not consider Defendants' possible arguments justifying the existence of either employment policy or practice.

Courts routinely grant certification to servers alleging illegal tip pool violations similar to those alleged here. *See, e.g., Carbone v. Zen 333 Inc.*, No. 2:16-cv-108, 2016 WL 7383920, *8-9 (D.S.C. Dec. 21, 2106) (authorizing notice to be sent to servers who were forced to share tips

with the house); *Lynch v. Dining Concepts Group, LLC*, No. 2:15-cv-580, 2015 WL 5916212, *4-5

(D.S.C. Oct. 8, 2015) (authorizing notice to be sent to servers and bartenders who were forced to

share tips with the house, which used the tips to pay wages to other employees); *McCoy v. RP,*

*Inc.*, No. 2:14-cv-3171, 2015 WL 6157306, *3-4 (D.S.C. Oct. 19, 2015) (authorizing notice to be

sent to servers at restaurant who were forced to share tips with non-tipped workers); *Gagliastre v.*

*Captain George's*, No. 2:17-cv-379, 2018 WL 9848232, *4-5 (E.D. Va. Mar. 13, 2018)

(authorizing notice to be sent to tipped employees regarding tip credit violations).

### 4.2. **Plaintiff is similarly situated to the putative class.**

Plaintiff seeks to represent the following Collective Action classes, the members of which

have been harmed by Defendants' unlawful pay policies and practices:

> All current and former tipped employees employed by Defendants in the State of
> Ohio between June 15, 2017 and the date of final judgment in this matter, who
> worked in Local Cantina locations where tips left on online orders were not
> distributed, in whole or in part, to tipped employees (the "Pre-May 2020 FLSA
> Subclass").

> All current and former tipped employees employed by Defendants in the State of
> Ohio between May 12, 2020 and the date of final judgment int his matter (the
> "Post-May 2020 FLSA Subclass").

Defendants applied the same policies to all of their tipped employees: Defendants (1) violated the

tip credit provision in 29 U.S.C. § 203(m) by retaining online credit card tips; (2) illegally

withheld tips from May 12, 2020 to present; and (3) failed to pay overtime for hours worked in

excess of 40 per workweek from May 12, 2020 to present.

Plaintiff has made a modest factual showing that she and other tipped employees at

Defendants' nine Local Cantina locations were together victims of a common policy or plan that

violated the law, and/or has a reasonable basis for her claim that she and other tipped employees

are similarly situated. *Castillo*, 302 F.R.D. at 486. Plaintiff was subject to the unlawful policies described above.

For example, Plaintiff completed daily sales reports as both a bartender and server, which did not reflect the tips she earned for online orders. Decl. Smith ¶ 28. She spoke with fellow tipped employees who worked at her store, and other restaurants in the Columbus area, who confirmed that Defendants' practice is restaurant-wide. Decl. Smith, ¶¶ 27-28; Decl. Cooper, ¶¶ 26-27; Decl. Bair, ¶ 26; Decl. Boswell, ¶¶ 11-14; Decl. North, ¶¶ 26-27; Decl. Sayre, ¶¶ 24-25; Decl. Meade, ¶¶ 24-25; Decl. Gross, ¶¶ 23-24; Decl. Merrill, ¶¶ 26-27 ; Decl. Lahey, ¶¶ 19-20; Decl. Mitchell, ¶¶ 24-25; Decl. Baker, ¶ 26.

Further, the employment contract that she and her fellow tipped employees received shows that other employees received were subjected to the same tip-withholding and overtime policies. *See* Exh. M, Smith Agreement; *see also* Exh. N, Cooper agreement. The employment contract states, "The Company will retain all income, *including gratuities*, as a way to help facilitate your increased salary for the next eight weeks." *Id.* (emphasis added). Moreover, once the pay change went into effect, each employee was required to work hours in excess of 40 per workweek, but did not receive compensation at one-and-a-half times their regular rate, or $37.50 per hour. Decl. Smith, ¶¶ 20-23; Decl. Cooper, ¶¶ 13, 20-23; Decl. Bair, ¶¶ 19-22; Decl. Boswell, ¶¶ 7-9; Decl. North, ¶¶ 13, 21-23; Decl. Lahey, ¶¶ 9, 14-15; Decl. Sayre, ¶¶ 15, 20-21; Decl. Meade, ¶¶18, 20-21; Decl. Gross, ¶¶ 13, 19-20; Decl. Mitchell, ¶¶ 18-22; Decl. Merrill, ¶¶ 20-23; Decl. Baker, ¶¶ 18, 20-22.

Plaintiff's Amended Complaint, Declarations, and the attached documents have exceeded the "low standard of proof" required at this stage. *Castillo*, 302 F.R.D. at 486. Plaintiff asks that the Court authorize Plaintiff to send notice of this collective action.

**5.  Court-authorized notice is appropriate in this case.**

Plaintiff requests the Court authorize that notice be disseminated to all individuals who worked at Defendants' Local Cantina locations from June 15, 2017 to present. Plaintiff seeks permission to send the notice through regular U.S. mail and electronic mail. Plaintiff's proposed notice and opt-in methods are in line with the FLSA's remedial purpose.

**5.1. Plaintiff's Proposed Notice**

Attached as Exhibit O is Plaintiff's proposed form of judicial notice. The proposed notice achieves the goals of FLSA notice: "to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burden on defendants." *Elmajdoub v. MDO Dev. Corp.*, No. 12-cv-5239, 2013 WL 6620685, *4 (S.D.N.Y. Dec. 11, 2013).

**5.2. Email Notice is Appropriate.**

The Supreme Court has held that "District Courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b)...facilitating notice to potential plaintiffs." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). District courts are instructed to authorize notice that is "orderly, sensible, and not otherwise contrary to statutory commands." *Id*. at 170. In 1989, when the Supreme Court made this decision, there is little doubt that notice via first class was the best way to provide notice in "an efficient and proper way." *Id*. at 171. But the Supreme Court was intentionally vague in defining the manner and form of the notice to be sent. "We confirm the

existence of the trial court's discretion, *not the details of its exercise.*" *Id.* at 170 (emphasis added). The Court should exercise discretion to approve notice via email and text message.

In addition to regular mail, Plaintiff seeks to send notice via email. In *Smith*, the Court recognized that email notice is "in line with the current nationwide trend and advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential plaintiffs will receive notice of the lawsuit." *Id.*, 2017 WL 2957741, at *6 (internal quotations omitted). Plaintiff's proposed email is attached as Exhibit P.

Plaintiff also requests the ability to send notice via text to the extent there are class members for whom Defendants do not have emails or whose mail notice is returned as undeliverable. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2017 WL 3500411, *5 (S.D. Ohio Aug. 15, 2017) (allowing notice to be sent via text to the extent that plaintiff shows notice via mail and email is insufficient). This third method of notice is particularly appropriate here, where Defendants regularly communicate with their employees through text message, so it is likely the most reliable contact information in Defendants' possession. *See* Decl. Smith, ¶ 23; Decl. Cooper, ¶ 15; Decl. North, ¶ 14; Decl. Sayre, ¶ 14; Decl. Meade, ¶ 13; Decl. Gross, ¶ 14; Decl. Merrill, ¶ 15; Decl. Mitchell, ¶ 21; Decl. Baker, ¶ 22. Plaintiff requests the following text message be approved:

> NOTICE IS AUTHORIZED BY THE UNITED STATES DISTRICT COURT:
> You are receiving this notice because records show that you work or worked as a tipped employee at Defendants' Local Cantina locations and may have the opportunity to join a lawsuit for unpaid wages. Please review the full lawsuit notice at _____.

### 5.3. A 90-day opt-in period is appropriate.

Once notice is sent, Plaintiff requests that putative class members be granted 90 days in which to return an opt-in form, which is the "standard notice period" in this district. *See, e.g., Smith*, 2017 WL 2957741, *7; *Brandenburg*, 2017 WL 3500411, at *6.

### 5.4. Expedited disclosure of names and contact information is appropriate.

In order to provide potential opt-in plaintiffs with notice of the pendency of this lawsuit, Plaintiff respectfully requests that the Court direct Defendants to produce a computer-readable list of names, last known addresses, telephone numbers, e-mail addresses, date of employment, and job titles for members of the putative classes within 15 days of the Court's order granting conditional certification. *See, e.g., Heaps v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2011 WL 1325207, *17 (S.D. Ohio Apr. 5, 2011).

While Defendants' records will provide the most efficient method of class members' contact information, Plaintiff asks that the Court authorize Plaintiffs to take reasonable steps to update and/or locate class members' contact information for the purpose of providing them notice. These steps include running names and addresses through a Change of Address Database and/or calling class members to inquire as to their current addresses. For obvious reasons, it is important to make sure the notices are sent to the correct place.

## 6. Conclusion

For the foregoing reasons, Plaintiff requests the Court to (1) send notice of a collective action consisting of Defendants' current and former tipped employees, (2) approve the Plaintiffs' proposed notice of the action, (3) order Defendants to provide name and contact information for all potential Collective members, and (4) authorize Plaintiff to send the notices via first class mail, email, and text message.

Respectfully submitted,


/s/ Phil Krzeski
Andrew R. Biller (Ohio Bar # 0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172)
Philip J. Krzeski (Ohio Bar # 0095713)
Louise M. Roselle (Ohio Bar # 14844)
Nathan J. Spencer (Ohio Bar # 0092262)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
*lroselle@billerkimble.com*
*nspencer@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

15

## Certificate of Service

I hereby certify that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's filing system. To the extent any parties are not registered on the CM/ECF filing system, I certify that I serve them a copy of the foregoing pursuant to the Federal Rules of Civil Procedure, and will provide an updated certificate of service once service is achieved.

*/s/ Phil Krzeski*
Philip Krzeski