IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

Kelsey Smith,

*On behalf of herself and those*
*similarly situated,*

        Plaintiff,

   v.

Local Cantina, LLC, *et al.*,

        Defendants.

Case No. 2:20-cv-03064

Judge James L. Graham

Magistrate Judge Kimberly A. Jolson

---

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

---

Plaintiff asks that the Court preliminarily approve the parties' settlement agreement (attached as Exhibit 1) and Proposed Notice (attached as Exhibit 2). The proposed settlement agreement resolves the collective/class-wide claims raised in this lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only.

The parties request that the Court:

    (1) Preliminarily approve the proposed settlement;

    (2) Approve the content, form, and distribution of the class notice;

    (3) Preliminarily approve the service award to Plaintiff;

    (4) Provisionally approve Class Counsel's request for attorney's fees and costs; and

    (5) Schedule a formal fairness hearing approximately 120 days after preliminary

approval.

The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

Respectfully submitted,

/s/ Phil Krzeski
Andrew R. Biller (Ohio Bar # 0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
abiller@billerkimble.com

Andrew P. Kimble (Ohio Bar # 0093172)
Philip J. Krzeski (Ohio Bar # 0095713)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
akimble@billerkimble.com
pkrzeski@billerkimble.com

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

Memorandum in support of Plaintiff's Unopposed Motion for
Preliminary Settlement Approval

### 1. Introduction

The parties have reached a settlement that would resolve this lawsuit. Plaintiff now asks the Court for preliminary approval of the parties' Settlement Agreement, attached as Exhibit 1.

### 2. Standard for Settlement Approval

This motion seeks to preliminarily approve both a Rule 23 class action and FLSA opt-in settlement.

As to Rule 23 class action settlements, courts typically use a three-step procedure. *In re Telectronics Pacing Sys., Inc.*, 137 F.Supp.2d 985, 1026 (S.D. Ohio 2001); *see also Williams v. Vokovich*, 720 F.2d 909, 921 (6th Cir. 1983). First, the Court determines whether to preliminarily approve the settlement. *Id.* Second, notice of the settlement is sent to interested persons. *Id.* And third, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement and an Ohio law wage and hour settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols.*, LLC, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. Id. at **17–27.

As described below, the proposed settlement meets both the rule 23 and FLSA standards for approval.

### 3. Background of the Lawsuit and Claims

Plaintiff Kelsey Smith worked as server at one Defendants' 17 restaurants located in or around the Columbus, Ohio area. On June 15, 2020, Plaintiff filed this lawsuit on behalf of herself and similarly situated delivery servers. *See* Doc. 1. The Complaint alleges several wage and hour violations that are resolved through this Settlement Agreement.

First, Plaintiff alleges that Defendants illegally retained tips earned by servers at approximately 17 restaurants in the Columbus area between March and June 2020 (referred to as the "COVID 19 Period"). On or around March 17, 2020, Defendants altered their server pay policy. Prior to March 17, 2020, Defendants paid servers the industry standard—tipped minimum wage plus all tips earned. But after March 17, 2020, Defendants changed servers' pay to a weekly salary, and began retaining *all* tips earned. Plaintiff argues that an employer cannot keep tips. *See, e.g.*, 29 U.S.C. § 203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employee tips, regardless of whether the employer takes a tip credit or not."). This pay policy lasted from approximately March 17 to June 22, 2020, when Defendants reverted server pay to tipped minimum wage plus all tips earned.

Second, during the COVID-19 Period, servers generally received a weekly salary of $1,000 per week but worked approximately 45-50 hours each week. Because servers are not exempt from the overtime exemptions in the FLSA and Ohio overtime law, servers are owed 1.5× their "regular" rate for the overtime hours they worked. Accordingly, they were owed $37.50 per hour for all hours worked in excess of 40 per workweek.

Third, from June 2017 to March 2020 (referred to as the "pre-COVID 19 Period"), Defendants paid the incorrect overtime rate. In the tipped worker context, the overtime pay rate is not calculated by multiplying the employee's general pay rate (*i.e.* tipped minimum wage) by 1.5. *See, e.g., Moulton v. W.W.I., Inc.*, No. 1:18-cv-67, 2019 U.S. Dist. LEXIS 130274, fn. 3 (M.D. Al. Aug. 5, 2019). Instead, the employer's permissible tip credit is the difference between general minimum wage and the tipped employee's base wage. *See, e.g., Ventura v. Bebo Foods, Inc.*, 738 F.Supp. 2d 8, 16 n.1 (D.D.C. 2010). Thus, to calculate the overtime pay rate for tipped employees, the employer must multiply full minimum wage (not the tipped minimum wage) by 1.5, and then subtract the employer's claimed tip credit from there. *Id*. In this case, Defendants miscalculated overtime by multiplying each employee's tipped wage rate (*e.g.* $4.35 in 2020) by 1.5, yielding $6.53. This is incorrect. Rather, Defendants should have multiplied full minimum wage ($8.70 in 2020) by 1.5 and then subtracted the tip credit, which would have yielded $8.70.  Thus, tipped workers were under-paid for every hour of overtime work (*e.g.* by $2.17 per hour in 2020).

Fourth, during the pre-COVID 19 Period, Plaintiff alleged Defendants withheld tips from online orders.

Fifth, Plaintiff alleges, to the extent that Defendants violated any wage law as a result of one or more of the above practices, Defendants also violated Ohio's Prompt Pay Act (§ 4113.15) by failing to timely pay all wages due. *See, e.g.*, *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n. 1 (6th Cir. 2016).

Sixth, Plaintiff asserts Defendants violated R.C. § 2307.60 which imposes civil liability for a criminal act.

Seventh, Plaintiff claims Defendants were unjustly enriched through their retaining tips and miscalculating overtime. The value of these claims rose and fell with the tip retention and miscalculation of overtime claims.

Eighth, Plaintiff alleges Defendants illegally distributed tips to managers from March 23, 2018 to March 16, 2020. This claim is not released as part of the settlement and is not included in the settlement fund described below in § 4.

Defendants deny each of the claims asserted by Plaintiff and contend that all servers were properly paid wages and reimbursed for expenses as required by federal and state law.

## 4. Summary of Settlement Terms

The settlement agreement creates a settlement fund of $630,000.00, inclusive of attorney's fees, expenses, claims administration fees, and service awards. *See* Exhibit 1. Under the terms of the agreement, unless they decide to opt out, each class member who worked for Defendants at any time between June 15, 2017 to July 29, 2020 and will receive a share of the settlement fund.

After subtracting fees, expenses, service awards, and claims administration costs, the remainder of the settlement fund will be distributed pro rata based on (1) overtime hours worked; (2) hours worked during the pre-COVID 19 Period; and (3) shifts worked during the COVID 19 period. Class Members who filed a consent to join form on or before August 6, 2021 will be paid based on 1.5 multiplier of the three categories listed above.

Upon preliminary approval, a Notice of Settlement (attached as Exhibit 2) will be distributed to the class members providing them with an opportunity to object or opt out before the Court considers whether to grant final approval. The Notice Period is 60 days.

To the extent funds are unclaimed, the Settlement Agreement provides those funds will be redistributed to the Class Members on the same prorated basis as above with Class Members receiving no less than $10. Ex. 1 at ¶ 3(D). To the extent that the remaining funds would result in Class Members receiving less than $10, the money will be distributed *cy pres* to the Restaurant Workers' Community Foundation—an advocacy and action nonprofit that servers the interests of restaurant workers. *See* https://www.restaurantworkerscf.org/news.

As part of the settlement, Defendants agree not to oppose Plaintiffs' counsel's request for a fee award of 33.33% of the settlement fund, advanced expenses, a $10,000 service award for Plaintiff Kelsey Smith, and settlement administration costs which will be deducted from the settlement fund.

### 5. The settlement provides for a fair resolution of disputed claims.

The most important factor to consider when evaluating a proposed settlement is the Plaintiff's probability of success on the merits. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. To evaluate this factor, Plaintiff will describe the facts and law underlying the claims covered by the release in the settlement agreement.

### 5.1. The tip theft claim.

Plaintiff's primary claim (*i.e.* COVID-19 tip theft claim) arises from Defendants' retention of tips received from March 17, 2020 to July 29, 2020. The FLSA is clear, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips." 29 U.S.C. § 203(m)(2)(B). Plaintiffs assert this a *per se* violation of the FLSA and analogous wage and hour law. Plaintiff asserts Defendants illegally retained approximately $510,000 in tips. Defendants dispute the alleged amount. Moreover,

Defendants assert that, under the specific circumstances of this case, they were permitted to retain this money.

In addition to unpaid wages, Plaintiff would have sought additional damages. *See* 29 U.S.C. § 260. Defendants dispute that Plaintiff would be entitled to liquidated damages as Defendants contend they acted in good faith and had reasonable grounds for believing that their tip policy was in compliance with the FLSA and corollary Ohio wage and hour law.

### 5.2.  The pre-COVID 19 and COVID 19 overtime claims.

Plaintiff's second claim is that Defendants miscalculated overtime during the pre-COVID 19 period and the COVID 19 Period. Defendants dispute these claims, and again, argue they acted in good faith and had reasonable grounds for believing that their tip policy complied with the FLSA and corollary Ohio wage and hour law. The total amount of overtime wages at issue is approximately $100,000.

### 5.3.  The online ordering tip retention claim.

Plaintiff claimed Defendants illegally retained tips from online orders. The parties exchanged records that determine Defendants did not, in fact, retain tips from online orders. This claim is included in the settlement agreement's release.

### 5.4.  Prompt Pay Act, unjust enrichment, and R.C. § 2307.60 claims.

Plaintiff also asserts a claim under Ohio's Prompt Pay Act, O.R.C. § 4113.15. This claim essentially has two components—unpaid wages and liquidated damages.

The unpaid wages portion can "rise and fall" with an underlying wage violation (*i.e.*, like an FLSA violation). *See, e.g., Parks v. Cent. USA Wireless,* LLC, No. 1:17-cv-448, 2019 U.S. Dist. LEXIS 167502, at *15 (S.D. Ohio Sep. 29, 2019). Because the damages for this claim mirror the

unpaid wages for the above violations, the analysis is the same (obviously, Plaintiff may only recover unpaid wages once).

The liquidated damages portion, however, is only available when there is no dispute as to the underlying wages. O.R.C. § 4113.15(B). Here, there is arguably a dispute over whether the unpaid wages were due. If Plaintiff prevailed on this claim, the class members could have been awarded an additional $200 each per pay period. If Plaintiff did not prevail, no additional damages would be available.

Plaintiff also claimed Defendants were liable under O.R.C. § 2307.60 and the doctrine of unjust enrichment. O.R.C. § 2307.60 provides civil liability for a criminal act. A willful violation of the FLSA is considered a criminal act for which violators can be "subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both." 29 U.S.C. 216(a). Importantly, R.C. § 2307.60 allows for punitive damages, in addition to unpaid wages, liquidated damages under the FLSA, and treble damages under OH Const., art. II, § 34a. Further, Plaintiff also alleged Defendants were unjustly enriched as a result of their pay policies.

Like with the Prompt Pay Act, these claims rise and fall with the allegations of unpaid wages. Regarding R.C. § 2307.60, Plaintiff would first need to prove Defendants illegally retained tips and overtime and then prove the violation is willful. As to unjust enrichment, Plaintiff would need to demonstrate that Defendants received an unjust benefit. In this case, there is a dispute as to whether both (or one) of these claims apply. Moreover, even if Plaintiffs were successful, Defendants would likely argue the unpaid wages and damages awarded offset any additional recovery.

### 5.5. Other Considerations

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; (6) the objections, if any, raised by class members; and (7) the public interest. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. Each factor is addressed below.

**Complexity, expense, and likely duration.** Wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). This factor supports approving the proposed settlement.

**The stage of the proceedings and amount of discovery completed.** This case settled early in the proceedings, but after the parties had exchanged sufficient discovery to evaluate the strengths and weaknesses of each claim. Specifically, Defendants produced payroll records relating to hours worked, tips received during the COVID 19 Period, and tips received from online orders. Plaintiff's counsel evaluated this data to calculate damages for the tip retention, overtime, and online tip retention claims. This data formed the basis of the parties' settlement negotiations. In light of these factors, the parties are able to properly evaluate settlement at this stage.

**The judgment of experienced trial counsel.** Plaintiff's counsel attests that, given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable. Plaintiff's counsel are well-versed in wage and hour cases. *See Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, at *5 (S.D. Ohio Jan. 18, 2019).

Defendants' counsel are likewise experienced in employment law and agree the settlement should be approved.

**The nature of the negotiations.** The parties reached the above settlement only after substantial negotiations, which included a private mediation with Stephen Watring, a respected mediator in this District. The parties initially attended a full-day mediation on March 16, 2020, but were unsuccessful in resolving the case. The parties engaged in discovery, continued negotiations, and were able to settle the case in principle in early July.

**Any objections from class members.** This factor will be evaluated at the final approval stage.

**The public interest.** The public interest generally favors settling class action litigation. This case is no different.

### 5.6.    The payment of attorneys' fees is reasonable.

Class Counsel will apply for one-third of the settlement fund as attorneys' fees ($210,000) plus expenses. Defendants have agreed not to object to this award, which is a standard amount in this type of case. *See, e.g.*, *Mullins v. Data Mgt. Co.*, No. 1:20-cv-214, 2021 U.S. Dist. LEXIS 124891, at *17 (S.D. Ohio June 21, 2021); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *14 (S.D. Ohio Nov. 25, 2019); *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *21; *Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *15 (S.D. Ohio Nov. 5, 2020). "One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman v. Grube, Inc.*, No. 3:16-cv-802, 2018 U.S. Dist. LEXIS 78222, at *12 (N.D. Ohio May 4, 2018); *see also Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 U.S. Dist. LEXIS

228221, at *10-11 (N.D. Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").[1]

Further, the Settlement Agreement is not conditioned on an award of attorneys' fees and costs. *See* Exhibit 1, §4(C). Thus, the Court does not need to make a final decision as to fees and costs now. Instead, Plaintiff asks that the Court provisionally approve the fee award, subject to any objections from class members prior to final approval. Provisionally approving the fee award at this stage serves a useful function, however, because the Class Members can be accurately informed in the notice as to what to expect with respect to attorneys' fees and costs.

In any case, Class Counsel will expend additional attorneys' fees and costs during the notice and approval processes, which could affect the Court's evaluation of the final fee award. At the final fairness hearing, the Court will be in a position to grant final approval to the fee request after taking into account any objections to the fee.

### 5.7. The incentive payment is reasonable, and similar payments are routinely awarded.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation). Courts recognize that it is appropriate to reward wage and hour plaintiffs who obtain tangible benefits for their fellow

---

[1] *See, e.g., In re Foundry Resins Antitrust Litig.*, No. 04-md-01639, Doc. 245 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 million dollar settlement); *In re Packaged Ice Antitrust Litig.*, Case No. No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *71 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 2:12-cv-83, 2014 U.S. Dist. LEXIS 91661, at *5 (E.D. Tenn. June 30, 2014) (finding "requested counsel fee of one third is fair and reasonable and fully justified.").

workers. *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *22. Incentive awards further the important public policies underlying the Fair Labor Standards Act and Ohio's wage laws. *Id*.

The settlement agreement earmarks $10,000 to Plaintiff for her work in bringing and prosecuting the case on behalf of other servers at Defendants' 17 restaurants. Plaintiff decided to bring this case not just on behalf of herself, but also for the benefit of more than 600 other servers in the Columbus, Ohio area.  Her name will be forever connected to this settlement, and it may have future implications—some potentially bad. Plaintiff spent substantial time and effort working with Class Counsel on this case. Plaintiff attended mediation and was instrumental in reviewing and processing discovery provided by Defendants. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred.

The $10,000 incentive award is in line with amounts awarded in similar cases. *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *22 (awarding $10,000 incentive award); *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *16-17 (same); *Mullins*, 2019 U.S. Dist. LEXIS 11019, at *16-17 (same); *McConnell*, 2021 U.S. Dist. LEXIS 97576, at *21-22 (same); *Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, at *222-24 (S.D. Ohio Nov. 5, 2020) (same); *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019) (same); *See also Dorn v. Eddington Sec., Inc.,* No. 08 Civ. 10271(LTS), 2011 U.S. Dist. LEXIS 156546, at *19 (S.D.N.Y. Sept. 21, 2011) (finding service award of $10,000 to the plaintiffs in a FLSA and state law wage class action was reasonable, stating "such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.").

**6. For settlement purposes, the Court should certify a class and collective action.**

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Representative actions can be appropriate in wage and hour lawsuits where individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, Plaintiff asks the Court to certify the following hybrid class/collective:

> All current and former tipped workers employed by Defendants from June 15, 2017 to July 29, 2020 who do not exclude themselves.

Defendants consent to certification of the above class for settlement purposes only. In doing so, Defendants do not waive any arguments they have opposing class/collective action certification should the Court decline to approve the settlement.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As described below, all of the requirements for class certification are met. Defendants consent to class/collective action certification for settlement purposes only.

While the FLSA requires similarly-situated workers to affirmatively "opt-in" before becoming a party plaintiff to an action for unpaid wages, Ohio law does not. *See* Ohio Const. Art. II, § 34a; O.R.C. § 4111.03; O.R.C. § 4111.10. Consequently, plaintiffs may maintain class actions for unpaid wages under Rule 23. *See, e.g., Castillo v. Morales, Inc.*, 302 F.R.D. 480, 489-90 (S.D. Ohio 2014) (certifying Ohio minimum wage class). Because the standard to certify a collective action is easier to meet than the Rule 23 standard, satisfying the Rule 23 standard also meets the collective action standard. Therefore, certification of a collective action is also appropriate here.

14

**6.1. Plaintiffs have satisfied the four Rule 23(a) prerequisites for class certification.**

Under Rule 23(a), Plaintiffs must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement, Plaintiff posits that each of these requirements is satisfied here. Defendants have agreed Rule 23 class certification is satisfied for settlement purposes only.

**6.1.1. Numerosity**

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. "Plaintiffs need not demonstrate that it would be impossible to join all of the putative class members; rather, they need simply show that joinder would be difficult or inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012).

During the relevant time period, over 600 servers worked for Defendants at 17 restaurant locations. This meets the numerosity requirement.

**6.1.2. Commonality**

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." Commonality exists "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Sweet v. Gen. Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976). Individual class members need not be identically situated to meet the commonality requirement. Rather, the "requirement is met where the questions linking the class members are substantially related to the

resolution of the litigation even though the individuals are not identically situated." *Swigart*, 288 F.R.D. at 183, *citing DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Moreover, commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question linking the class members is substantially related to the litigation's resolution. *Id.*; *see also Bacon v. Honda of American Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (commonality not required when "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue").

Here, Plaintiff maintains that the legal theories and relevant facts are common to the class because the class consists of workers that were allegedly harmed in the same way. Plaintiff has identified the following common questions of law or fact presented by her claims: (1) whether Defendants improperly retained tips given to or intended for Plaintiff and the Rule 23 class for the COVID 19 period; (2) whether Defendants paid Plaintiff and the Rule 23 Class time-and-a-half overtime for hours worked in excess of 40 per workweek; (3) whether Defendants withheld online ordering tips from Plaintiff and the Rule 23 Class;(4) whether Defendants failed to pay Plaintiff and the Rule 23 class in a timely manner as described by O.R.C. § 4113.15; (5) whether Defendants' policy of failing to pay Plaintiff and the Rule 23 class was instituted willfully or with reckless disregard of the law; and (6) the nature and extent of class-wide injury and the measure of damages for those injuries. Outside of the settlement context—*i.e.*, when defendants dispute class certification—courts in this district have certified a rule 23 class for similar claims. *See, e.g. Castillo*, 302 F.R.D. at 486 (certifying Ohio rule 23 class based on uniform tip violation applied across several restaurants).

### 6.1.3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. "Typical does not mean identical, and the typicality requirement is liberally construed." *Swigart*, 288 F.R.D. at 185, *citing Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D.Ill. 1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*, *citing Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996). The requirement of typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *Id., citing Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 491 (S.D.Ill. 1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)."). This is why a finding that commonality exists generally results in a finding that typicality also exists. *Violette v. P.A. Days, Inc.*, 214 F.R.D. 207, 214 (S.D. Ohio 2003). Typicality "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Swigart*, 288 F.R.D. at 185 (internal citations omitted). Where, as here, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Laichev v. JBM, Inc.*, 269 F.R.D. 633, 640-41 (S.D. Ohio 2008). Additionally, differences in the amount of damages allegedly owed each putative class member "is not fatal to a finding of typicality." Id. at 641.

Here, Plaintiff is a member of the putative class and her claims are typical of all class members' claims in that they all arise from the same course of conduct. She was subject to the same COVID 19 pay, overtime, and online order tip policies as every other class member in this case. The same tip out and overtime policies applied to putative class members at all of Defendants' restaurants. Plaintiff maintains that each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. The premise of the typicality requirement is simply stated: as goes the claims of the named plaintiffs, so go the claims of the class. If Defendants' wage and hour practices violate Ohio law as to Plaintiff, they violate Ohio law as to the putative class members. Accordingly, the typicality requirement is met here.

### 6.1.4. Adequacy of Representatives

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) Do the representatives have common interests with the unnamed members of the proposed class? (2) Will the representatives vigorously prosecute the interests of the class through qualified counsel? *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). These two requirements are met here.

Plaintiff worked as a server for Defendants. With respect to the first inquiry, because Plaintiff is challenging the same unlawful conduct and seeking the same relief as would the rest of the class members, Plaintiff's interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. *See, e.g., Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994); *Thomas v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiff's interests are essentially identical to all putative class members' interests.

With respect to the second inquiry, the proposed class representative is ready, willing, and able to fulfill her duties and has done so to date. Likewise, Plaintiff's counsel is well-qualified to handle this matter. Plaintiff's Counsel has a nationwide wage and hour practice that has successfully advocated for workers across the country. Plaintiff's counsel is well-versed in this area of law and the strengths and weaknesses of the claims at issue. *See, e.g.*, *Arp v. Hohla and Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, *8 (S.D. Ohio Nov. 5, 2020) (stating, "[Plaintiffs' Counsel] are highly qualified and have substantial experience in federal court and class action litigation. Class Counsel has substantial experience in wage and hour litigation and 'delivery driver litigation' in particular."). Plaintiff's counsel has actively and vigorously pursued Plaintiff's (and the putative class members') claims in this case. Plaintiff's counsel has committed, and will continue to commit, the resources necessary to represent the putative class in this case.

### 6.2.  Plaintiffs have satisfied the Rule 23(b)(3) class certification requirements.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, Plaintiff contends that both of Rule 23(b)(3)'s requirements are met in this case.

#### 6.2.1.  Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and

if these particular issues are more substantial than the issues subject only to individualized proof."
*Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

There are numerous common questions of law and fact arising out of Defendants' conduct, making this an appropriate case for resolution by means of a class action. Most notably, Defendants' tip and overtime policies applied to servers at all restaurants. Plaintiff believes that these issues would be determined based on common proof, and common questions predominate in this case. As a result, this case is appropriate for class certification.

### 6.2.2.  A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. Moreover, efficiency favors concentrating the claims in this Court, as there is no record of other, similar litigation pending in Ohio. A final resolution of Defendants' liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of

the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

### 7. The proposed notice conforms to federal law.

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See generally* Exhibit 2, Notice of Settlement. The notice also informs putative class members that they may enter an appearance through counsel if the member so desires, and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A).

The Court should direct distribution of the class notice in the manner described in the settlement agreement. The settlement agreement envisions sending the Notice by first class mail and email.

### 8. The Court should set a hearing for final approval.

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 120 days after the Court grants preliminary approval of the proposed settlement. This date would allow a reasonable period for class notices to be mailed and for class members to object to, or opt-out of the settlement, but would not unduly delay the case's adjudication. The timeline envisioned for administration is below:

| Time | Event |
|---|---|
| Within 14 days of preliminary approval | Defendants provide Class Counsel and the Administrator with the final list of class members, and their contact information. |
| Within 14 days after receiving the class list | The Administrator will send the notice. |
| Within 60 days after mailing notices | Class members may opt-out or object, if they desire to. |
| Within 30 days of the notice period deadline | Plaintiffs will draft and file a motion for final approval. |
| Within 40 days of the Court's final approval Order | The Claims Administrator will distribute payments to Class Member and Class Counsel, subject to the contingencies contained in the Parties' Settlement Agreement relating to timely filed appeals. |

9.  **Conclusion**

Plaintiff asks the Court to enter an Order: (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsel's request for attorney's fees and costs; (3) approving Plaintiff's service awards; (4) directing distribution of the Class Notice to class members to provide an opportunity to opt-out or object to the settlement; and (5) setting the hearing date for the final approval of the settlement.

Respectfully submitted,


/s/ Phil Krzeski
Andrew R. Biller (Ohio Bar # 0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759

22

Facsimile: (614) 340-4620
abiller@billerkimble.com

Andrew P. Kimble (Ohio Bar # 0093172)
Philip J. Krzeski (Ohio Bar # 0095713)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
akimble@billerkimble.com
pkrzeski@billerkimble.com

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

**<u>Certificate of Service</u>**

The undersigned hereby certifies that the foregoing was filed through the Court's ECF system and Defendants will receive a copy.

<u>/s/ Phil Krzeski</u>
Philip J. Krzeski