IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Kelsey Smith,<br><br>*On behalf of herself and those<br>similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>Local Cantina, LLC, *et al.*,<br><br>Defendants. | Case No. 2:20-cv-03064<br><br>Judge James L. Graham<br><br>Magistrate Judge Kimberly A. Jolson |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL

Plaintiff asks that the Court approve the parties' settlement agreement. The proposed settlement agreement (Doc. 51-1) resolves the collective/class-wide claims raised in this lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only. The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

Respectfully submitted,

/s/ Andrew Biller
Andrew R. Biller (Ohio Bar # 0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
abiller@billerkimble.com

2

Andrew P. Kimble (Ohio Bar # 0093172)
Samuel D. Elswick Jr. (Ohio Bar
#0100327)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 452-3568
Facsimile: (614) 340-4620
akimble@billerkimble.com
selswick@billerkimble.com

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

Memorandum in support of
Plaintiff's Unopposed Motion for Final Settlement Approval

## 1. Introduction

Plaintiff Kelsey Smith has reached a Settlement Agreement between herself, the putative class/collective action members (collectively, "Plaintiffs"), and Defendants Local Cantina Clintonville, LLC; 197 Thurman Ave LLC; Local Cantina, LLC; Local Cantina German Village, LLC; Local Cantina Dayton LLC; Local Cantina Dragon LLC; Local Cantina Dublin LLC; Local Cantina Gahanna LLC; Local Cantina Grandview LLC; Local Cantina Grove City LLC; Local Cantina Hilliard LLC; Local Cantina Holdings LLC; Local Cantina II, LLC; Local Cantina New Albany LLC; Local Cantina Polaris LLC; Local Cantina Properties LLC; Local Cantina Rossi LLC; Local Cantina Trolley LLC; Local Cantina Union Club LLC; and George Tanchevski (collectively, "Defendants"). If approved, the Agreement will resolve the claims asserted against Defendants that are detailed in the settlement agreement. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only.

## 2. Background of the Lawsuit

Plaintiff Kelsey Smith, who worked as a server at one Defendants' 17 Ohio restaurant locations, filed this wage and hour lawsuit on June 15, 2020. *See* Complaint, Doc. 1. Plaintiff alleges that, from approximately March 17, 2020 to June 22, 2020, Defendants illegally retained tips received by tipped employees and denied time-and-a-half overtime wages to tipped employees. These claims will be referred to herein as the "post-COVID 19 claims." Plaintiff's lawsuit also alleged that, from June 15, 2017 to March 16, 2020 and from June 23, 2020 to July 29, 2020,

2

Defendants miscalculated the overtime wages paid to tipped employees and illegally retained tips left on online food orders.[1] These claims will be referred to herein as the pre-COVID 19 claims." Plaintiff alleged these practices violated the Fair Labor Standards Act, the Ohio Constitution, Article II, Section 34a, the Ohio Minimum Fair Wage Standards Act, O.R.C. 4111.01, et seq., the Ohio Prompt Pay Act, O.R.C. 4113.15, the Ohio Criminal Acts Statute, O.R.C. 2307.60, and resulted in unjust enrichment to Defendants. Defendants deny each of the claims asserted by Plaintiff and contend that all servers were properly paid wages and reimbursed for expenses as required by federal and state law.

Shortly after the case was filed, Plaintiff filed a Motion to Send Notice of this Action to Similarly Situated Employees. Doc. 6. Defendants did not oppose the Motion. Instead, the parties jointly asked the Court to stay the case to allow time for the parties to discuss settlement, to toll the statute of limitations for putative opt in plaintiffs during the pendency of the stay, and to approve of the parties' proposed form of FLSA collective action notice in the event the parties' negotiations failed. Doc. 12. On August 5, 2020, the Court granted the parties' Joint Motion to Stay. Doc. 13.

On March 10, 2021, the parties attended mediation but were unable to settle the case. As a result, Plaintiff sent notice of the FLSA collective action to the putative opt in class. In total, 123 tipped employees joined the case. *See* Docket.

In early July 2021, as discovery was getting underway, the parties reached a settlement in principle to resolve Plaintiff's claims for alleged illegal tip retention during the post-Covid period, alleged unpaid overtime during the post-Covid period, alleged unpaid overtime during the pre-

---

[1] Plaintiff also alleged Defendants illegally distributed tips to managers from March 23, 2018, to March 16, 2020. But, this claim is not released as part of the settlement and is not included in the settlement fund.

Covid period, and alleged illegal tip retention on online orders during the pre-Covid period.

The parties presented their settlement agreement to the Court for preliminary approval on October 26, 2021. Doc. 51. The Court granted preliminary approval on November 1, 2021. Doc. 53.

On November 23, 2021, the claims administrator disseminated the Settlement Notice to the putative class members in the accordance with the terms of the settlement agreement. None of the class members have objected or opted out of the settlement.

Plaintiffs now ask the Court to grant final approval of the settlement, award fees, reimbursement of costs, and incentive awards.

### 3. Summary of Settlement Terms

The settlement agreement creates a settlement fund of $630,000, inclusive of attorney's fees, expenses, claims administration fees, and service awards, to resolve the four claims detailed above. *See* Doc. 51-1.

Under the terms of the agreement, each class member who worked for Defendants at any time between June 15, 2017 to July 29, 2020 and will have a check mailed to them in the amount of their share of the settlement fund.

After subtracting fees, expenses, service awards, and claims administration costs, the settlement fund will be distributed on a pro-rata basis based on: (1) overtime hours worked during the pre-COVID 19 period; (2) hours worked during the pre-COVID 19 period; and (3) shifts worked during the post-COVID 19 period. From the Net Settlement Fund (i.e., the Settlement Fund less attorney's fees, costs, incentive awards, and administrative expenses), $25,000 will be allocated to the pre-COVID 19 unpaid overtime claim, $10,000 will be allocated to the pre-COVID 19 tip retention on online orders claim, and the remainder will be shared by those class members

4

who worked during the post-COVID 19 period. The 121 class members that have who filed a consent to join form on or before August 6, 2021, will receive a 1.5× share to account for those class members having potentially preserved more of their FLSA claims. All other class members will receive a single share.

In exchange for these payments, all class members who either opted into the lawsuit or cashes or negotiates a settlement check will release:

> Alleged unlawful retention of employee tips from March 17, 2020 to June 22, 2020; all claims for alleged unpaid overtime wages for hours worked from March 17, 2020 to June 22, 2020; all claims for alleged unpaid overtime wages for hours worked from June 15, 2017 to March 16, 2020 and from June 23, 2020 to July 29, 2020; and all claims for misappropriated tips or tip credit differential arising from the allegation that Defendants unlawfully retained employee tips left on online to-go orders from June 15, 2017 to March 16, 2020 and from June 23, 2020 to July 29, 2020, including any liquidated damages, statutory damages, civil damages, exemplary damages, punitive damages, penalties, interest, and attorneys' fees and expenses related thereto pursuant to the FLSA and Ohio law.

*See* Doc. 51-1, §5.

All amounts dispersed to Class Members will be by check to each Class member. One-half (1/2) of the individual settlement payments to Class Members will be treated as ordinary wages subject to payroll tax withholding, and the other one-half (1/2) of the individual settlement payments to Class Members will be treated as statutory damages or miscellaneous payments. Defendants are responsible for payment of the employers' share of payroll taxes as required by law, and those amounts are to be paid outside the settlement fund.

To the extent funds are unclaimed, the Settlement Agreement provides those funds will be redistributed to the Class Members on the same prorated basis as above with Class Members receiving no less than $10. Ex. 1 at ¶ 3(D). To the extent that the remaining funds would result in Class Members receiving less than $10, the money will be distributed *cy pres* to the Restaurant

Workers' Community Foundation—an advocacy and action nonprofit that serves the interests of restaurant workers. *See* https://www.restaurantworkerscf.org/news.

As part of the settlement, Defendants agree not to oppose Plaintiffs' counsel's request for a fee award of 33.33% of the settlement fund, advanced expenses, a $10,000 service award for Plaintiff Kelsey Smith, and settlement administration costs which will be deducted from the settlement fund.

### 4. Standard for Settlement Approval

Courts typically use a three-step procedure for approving class-wide settlements. *Merkner v. AK Steel Corp.*, 2011 U.S. Dist. LEXIS 157375, at *1 (S.D. Ohio Jan. 10, 2011), *see also Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021). First, the Court determines whether to preliminarily approve the settlement. *Id*. Second, notice of the settlement is sent to interested persons. *Id*. Finally, the Court must decide whether to finalize approval after holding a hearing. *Id.*

The Sixth Circuit adheres to the "federal policy favoring settlement of class actions." *Int'l Union, United Auto, Aerospace & Agr. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *see also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1268, 1372 (6th Cir. 1976) ("Public Policy strongly favors settlement of disputes without litigation."). Class settlements conserve scarce resources that would otherwise be devoted to protracted litigation. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991); *In re Microstrategy, Inc., Sec. Litig.*, 148 F.Supp.2d 654, 663 (E.D. Va. 2001); see *also Ehrheart v. Verizon Wireless*, 609 F.3d 589, 594–95 (3d Cir. 2010) (there is an "especially strong" presumption in favor of voluntary settlements "in class actions…where substantial judicial resources can be conserved by avoiding formal litigation"); Newberg §§ 11.41 ("The compromise of complex litigation can be encouraged by the courts and favored by public policy.").

When evaluating a class action settlement, courts in the Sixth Circuit evaluate seven factors. *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894-95 (6th Cir.2019). Those factors include: (1) the risk of fraud or collusion, (2) the complexity, expense and likely duration of the litigation, (3) the amount of discovery engaged in by the parties, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) the reaction of absent class members, and (7) the public interest. *Id*. In evaluating an FLSA settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, at *5 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id*. at *5–6. As described below, the settlement meets these standards.

The Court has already evaluated 6 of these 7 factors and found in its Order granting preliminary approval that the proposed settlement "falls within the 'range of reasonableness.'" Below, Plaintiff addresses each factor, including the one factor that could not be evaluated at the preliminary approval stage: the reaction of absent class members.

### 4.1. Probability of Success on the Merits

The most important factor to consider when evaluating a proposed settlement is the Plaintiff's probability of success on the merits. *Déjà Vu*, 925 F.3d at 895. Plaintiff's success in this case was uncertain for a number of reasons.

Plaintiff's primary claim is that Defendants illegally retained all of the tipped employees' tips during the post-COVID 19 period, from March 17, 2020 to June 22, 2020. During this period, Defendants implemented a policy of paying their tipped employees a set weekly salary and retaining 100% of the tips the tipped employees received. The FLSA is clear, "[a]n employer may not keep tips

received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips." 29 U.S.C. § 203(m)(2)(B). Plaintiffs assert this a *per se* violation of the FLSA and analogous wage and hour law. Based on Defendants' records, Plaintiff estimates that Defendants retained approximately $510,000 in tips.

Defendants dispute Plaintiff's assertion that their post-COVID 19 policies were illegal. Defendants assert that, under the specific circumstances of this case, they were permitted to retain their tipped employees' tips in exchange for the increased weekly salary they provided. Further, Defendants contend that Plaintiff's calculations over-estimate the amount of tips retained by the company during this period by including tips that were received before the post-COVID 19 policy was implemented, and were therefore retained by the tipped workers. Defendants contend that the actual amount of tips retained by the company was between $300,000 and $350,000 in tips.

Second, Plaintiff alleges that Defendants' post-COVID 19 policy of paying tipped employees a set weekly salary regardless of the number of hours they worked violated the FLSA's overtime rules. Plaintiff alleges that, because the tipped employees are not exempt from the FLSA's overtime requirements, the company was required to pay them time-and-a-half their "regular rate" for all hours worked in excess of 40 per workweek. *See* 29 U.S.C. § 207(a); O.R.C. §4111.03(A). Plaintiff alleges that tipped workers worked approximately 45-50 hours per week during the post-COVID 19 period. As a result, Plaintiff estimates that the tipped employees were denied approximately $60,000 in overtime wages during the post-COVID 19 period.

Defendants would dispute this claim as well, arguing that the circumstances of this case justified the compensation arrangement they adopted. Defendants would also dispute the number of hours worked by tipped workers during this time period, so, even if Plaintiff prevailed on liability, the amount of damages would be in dispute.

8

Third, Plaintiff alleges that Defendants failed to properly calculate overtime pay for tipped employees during the pre-COVID 19 time period. In the tipped worker context, the overtime pay rate is not calculated by multiplying the employee's general pay rate (*i.e.,* their tipped wage rate) by 1.5. *See, e.g., Moulton v. W.W.I., Inc.*, No. 1:18-cv-67, 2019 U.S. Dist. LEXIS 130274, fn. 3 (M.D. Al. Aug. 5, 2019). The proper method is to calculate 1.5× full minimum wage, then deduct the tip credit from the resulting amount. *See, e.g., Ventura v. Bebo Foods, Inc.*, 738 F.Supp. 2d 8, 16 n.1 (D.D.C. 2010). Here, Plaintiff alleges that Defendants miscalculated overtime pay because they multiplied the tipped wage rate by 1.5×, rather than multiplying full minimum wage by 1.5×, then claiming a tip credit from that amount. Based on Defendants' records, Plaintiff estimates Defendants denied tipped employees approximately $35,515.95 in overtime wages during the pre-COVID 19 period.

Defendants dispute this allegation, claim that they have acted in good faith and had reasonable grounds for believing their compensation arrangement was proper, and would dispute the number of hours worked by the class members.

Fourth, Plaintiff alleged that Defendants retained tips on online to-go orders throughout the time period relevant to this lawsuit. Plaintiff's review of Defendants' payroll records did not immediately indicate that the tips on online to-go orders had in fact been retained by the company. Defendants deny that they retained any tips left on online to-go orders and claim that they have acted in good faith with regard to this claim.

In addition to unpaid wages, Plaintiff intended to seek additional 2× unpaid wages under the Ohio Constitution, Article II, Section 34a, an additional 1× unpaid wages under the FLSA, liquidated damages under the Prompt Pay Act in the amount of $200 per violation or 6% interest, whichever is greater, and punitive damages under the Ohio Criminal Acts Statute. Defendants intended to dispute all of these claims for damages.

9

Finally, while FLSA conditional certification had been granted, Plaintiff's success on Rule 23 class certification was not certain. Defendants intended to oppose Plaintiff's contemplated Rule 23 class certification motion. If class certification had not been granted, the value of the claims in the case would have been reduced substantially.

As it stands, Plaintiff alleges that the class members are owed $606,175.28 in unpaid wages, not including the additional damages sought under federal and Ohio law. The settlement requires Defendants to pay $630,000 to resolve the claims. In light of the uncertainty of proceeding with this case, this factor supports approval of the settlement.

### 4.2. The Risk of Fraud or Collusion

The next factor to consider is whether there was fraud or collusion in reaching the settlement agreement. Prior to discussing settlement, Defendants produced substantial payroll, tip, and sales information for each of their restaurant locations, which provided Plaintiff with sufficient information to evaluate damages. Thereafter, on March 10, 2021, the parties attended a private mediation with Stephen Watring, a respected mediator in the District. But, the parties did not reach an agreement at mediation. Instead, the litigation proceeded, with Plaintiff sending FLSA collective action notice and commencing class discovery. In early July, however, the parties reached the agreement now before the Court. Because there is no indication that the agreement was reached through fraud or collusion, this factor supports settlement approval.

### 4.3. The Complexity, Expense, and Likely Duration of the Litigation

Wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). This case is no different. It involves the Defendants 17 restaurants, hundreds of Defendants' employees, thousands of pages of time, payroll, tip, and sales records, and complex questions of federal

and state law. *See Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *18 (S.D. Ohio July 11, 2014) (resolving issues in class actions where Plaintiffs alleged overtime claims under the FLSA and Ohio state laws is by its very nature is complicated and time consuming). This factor supports approving the proposed settlement.

### 4.4. The Amount of Discovery Engaged in by the Parties

Defendants produced substantial information relating to their operations at all 17 of their restaurant locations. Defendants provided comprehensive time and payroll records for the post-COVID 19 period. Defendants also provided a sampling of payroll records for the pre-COVID 19 period. This information provided Plaintiff with sufficient information to evaluate the claims that are settled through the settlement agreement. *See, e.g., Arp v. Hohla & Wyss Ents., LLP*, S.D.Ohio No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *12 (Nov. 5, 2020) (explaining that exchange of employer's payroll records is sufficient to evaluate the strengths and weaknesses of case). This factor supports approval of the settlement.

### 4.5. The Opinions of Class Counsel and Class Representatives

Plaintiff's counsel attests that, given the strengths and weaknesses of the claims, this settlement is fair, adequate, and reasonable. Plaintiff's counsel are well-versed in wage and hour cases. *See, e.g., Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *21 (S.D. Ohio May 17, 2021) ("Biller & Kimble, LLC have proven themselves to be highly skilled advocates for pizza delivery drivers and other workers."). Likewise, Plaintiff believes that the settlement provides a fair compromise to the class members' claims.

### 4.6. The Reaction of Absent Class Members

The only factor Plaintiff was unable to address at the preliminary approval stage was the reaction of absent class members. Now that the notice period is complete, Plaintiff can address this

11

factor—none of the 788 class members opted out or objected to the settlement. Based on Plaintiff's counsel's communications with class members, the reaction to the settlement has been overwhelmingly positive. As such, this factor, like all of the others, weighs in favor of settlement approval.

### 4.7. The Public Interest

The public has an interest in resolving complex class actions, which require significant Court resources that could be allocated to other matters. Moreover, the public has an interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages. Both weigh in favor of approving the settlement. Because all factors favor approval, the Court should grant final approval. *See, e.g., Mullins v. Data Mgt. Co.*, No. 1:20-cv-214, 2021 U.S. Dist. LEXIS 124891, at *16 (S.D. Ohio June 21, 2021).

### 5. Certification of a Settlement Class is Appropriate

Next, Plaintiff seeks final certification of this action as an FLSA collective action and a Rule 23 class action. Plaintiffs explained why FLSA collective action and Rule 23 class certification is appropriate in their Motion for Preliminary Approval and incorporate those arguments herein. *See* Doc. 51, PageID 613–620. In short, Plaintiff meets the requirements for FLSA collective action certification because the tipped employees who make up the FLSA collective class are "similarly situated" in that they were all subject to the same or similar compensation policies by Defendants. *See* 29 U.S.C. 216(b). Plaintiff meets the requirements for Rule 23 class certification because the class is sufficiently numerous to make joinder impracticable, there are common questions of law and fact applicable to the entire class, the class representative's claims are typical of the claims asserted by the rest of the class members, the class representative and her counsel are able to adequately represent the interests of the class, the questions relevant to the class predominate over

12

individualized questions that might apply to the class members, and the class action procedure is superior to other methods for adjudicating this case. *See* Fed. R. Civ. P. 23(a); (b)(3). Defendants consent to class/collective action certification for settlement purposes only. Plaintiffs ask that the Court finally certify the class/collective action for settlement purposes.

Finally, the Notice process completed by the parties meets the requirements for Rule 23(c)(2) and 23(e)(1). Following the courts entry of preliminary approval preliminary approval, the parties employed a professional claims administrator (Atticus Administration, LLC) to send a notice of settlement to the putative class members. The notice period lasted for 60 days, from November 29, 2021 to January 28, 2022. The Administrator sent notice by first class mail to approximately 788 of them. The Administrator additionally sent email notice to 762 of them. Mail was returned as undeliverable for 165 of them, none of which had a forwarding address. The administration was also able to obtain 141 additional addresses through skip tracing. Thus, only 36 notices remained undeliverable, or 4.6% of the class. No class member objected, and no class member opted out. *See* Biller Decl., ¶¶8,10. This notice process meets the requirements stated in Rule 23(c)(2). *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *9 (S.D. Ohio Nov. 25, 2019) (finding that 96.5% of the class receiving notice was an excellent result).

**6. The payment of attorneys' fees and costs is reasonable.**

Class Counsel requested and was granted provisional approval for one-third of the settlement fund as attorneys' fees, or $210,000.

When assessing the reasonableness of a fee petition in a class action, district courts engage in a two-part analysis. *See McConnell*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *14. First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* Second, the court analyzes the six factors set forth by the

Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

### 6.1. The Court should adopt the percentage-of-the -fund approach.

The Court must decide if it will award fees based on either the "percentage-of-the-fund" or "lodestar." *Arp*, 2020 U.S. Dist. LEXIS 207512, at \*15. "This flexible approach allows the Court to account for the unique and varied circumstances present in each class action. *Id.* at \*16.

"Absent compelling reasons to the contrary, courts prefer the percentage-of-the-fund method, as it best reflects the FLSA's employee-protection objective." *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 26005, at \*10 (S.D. Ohio Feb. 9, 2022).[2] The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *McConnell,* 2021 U.S. Dist. LEXIS 97576, at \*15, *quoting Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at \*11 (S.D. Ohio Sep. 20, 2019). It is therefore, the "preferred" method in this district. *Id.* at \*17. "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[.]" *McConnell*, 2021 U.S. Dist. LEXIS 97576, at \*15 (citation omitted). "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead rewards counsel for success and penalizes it for failure." *Id.*

Plaintiffs ask the Court to adopt the percentage-of-the-fund approach and award class counsel 1/3 of the settlement fund in attorneys' fees.

### 6.2. The *Ramey* Factors

---

[2] In wage cases, the "compelling circumstances" that justify the lodestar method usually involve a situation where the employees' damages are relatively small. In such a circumstance, counsel can accrue fees many times greater than the value of the underlying claims. It is essential to the proper functioning of wage laws that lawyers who undertake these cases be compensated for these efforts. This is the type of "compelling circumstance" that argues in favor of applying a lodestar method in a wage and hour class/collective action settlement. *See Arp*, 2020 U.S. Dist. LEXIS 207512, n. 1 (*citing Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir. 2021)).

14

Next, the Court must evaluate the requested fee itself. An award of one-third "is a normal fee amount in a wage and hour case." *See Brandenburg*, No. 3:16-cv- 516, 2019 U.S. Dist. LEXIS 204371, at *14 ; *see also, e.g., Mullins*, 2021 U.S. Dist. LEXIS 124891, at *17; *McConnell*, 2021 U.S. Dist. LEXIS 97576 at *21; *Arp*, 2020 U.S. Dist. LEXIS 207512, at *15. This case presents no unusual circumstances that would justify deviating from the typical award.

Courts in this district also consider the six *Ramey* factors to ensure the attorneys' fee award is reasonable: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *11 (*citing, Ramey*, 508 F.2d 1188, 1196). In evaluating these factors, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *McConnell*, 2021 U.S. Dist. LEXIS 97576, at *17. Here, each of these factors weighs in favor of granting the requested fee.

First, the settlement results in a substantial benefit to the class. At mediation, Plaintiff calculated that the unpaid wages of the class members for all claims are approximately $606,175. The parties' settlement agreement requires Defendants to pay more than 100% of unpaid wages. This is an excellent result considering there was a chance the class could have lost altogether. *Compare Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11,2016) (in class action

for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth*, 2010 U.S. Dist. LEXIS 20446, *20 (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average."). This factor supports the granting of the requested fee award.

Second, there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and "the societal benefit is particularly acute in wage and hour cases brought on behalf of minimum wage workers." *Arp*, 2020 U.S. Dist. LEXIS 207512, *17-18. "The attorneys who take on class action cases enable this." *Id.* (*citing Moore v. Aerotek, Inc.*, 2017 U.S. Dist. LEXIS 102621, *26-27 (S.D. Ohio June 30, 2017)). Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted). This factor supports the requested fee award.

Third, class counsel's services were provided on a contingency fee basis. *See* Biller Decl. ¶11. This factor supports the requested fee award.

Fourth, while a lodestar cross-check is not required,[3] it supports the requested attorneys' fees award. Class counsel worked a total of 442.5 hours on this case thus far, for a total lodestar of $126,755, for an average hourly rate of $286 per hour. Class counsel's work included investigating the case, drafting and filing the complaint and motions for FLSA conditional certification, communicating with various plaintiffs and class members, evaluating payroll records for settlement purposes, preparing for mediation, and conducting discovery. Given the case's size, complexity, and difficulty, the hours expended, total lodestar, and average hourly rate are reasonable. *See, e.g.,*

---

[3] *Arp*, 2020 U.S. Dist. LEXIS 207512, at *18.

*McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19 (approving the same rates proposed here for Biller & Kimble's attorneys).[4]

Class counsel's hours worked to date are listed in the below chart, taken from Class Counsel's contemporaneous time records:

| Timekeeper | Rate | Hours | Lodestar |
|---|---|---|---|
| Andy Biller | $600.00 Per Hour | 15.4 | $9,240 |
| Andrew Kimble | $550.00 Per Hour | 49.2 | $27,060 |
| Samuel Elswick, Jr. | $250.00 Per Hour | 46.6 | $11,650 |
| Riley Kane | $250.00 Per Hour | .5 | $125 |
| Phillip Krzeski | $350.00 Per Hour | 139.9 | $48,965 |
| Nathan Spencer | $350.00 Per Hour | 5.3 | $1,855 |
| Erica Blankenship | $350.00 Per Hour | .1 | $35 |
| BK Paralegal | $150.00 Per Hour | 185.5 | $27,825 |
| Totals | | 442.5 | $126,755 |

If it would assist the Court, Class Counsel can make their time records available for the Court's review. Class Counsel suggest that such a detailed review is not necessary here because the amount sought is usual, the hours expended are facially reasonable, and even reducing the lodestar by half still produces a multiplier within the acceptable range (discussed below). "In determining fee awards, courts should not 'become green-eyeshade accountants[,]' but instead must content themselves with 'rough justice[.]" *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021).

Moreover, class counsel's work will continue after final approval and, accordingly, the lodestar amount does not reflect the full extent of the work counsel will put into this case. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members'

---

[4] *See also, e.g., Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *17; *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19; *Chrismon v. Meadow Greens Pizza*, No. 5:19-CV155, 2020 WL 3790866, *5 (E.D.N.C. July 7, 2020); *Hawkins v. Middle Tenn. Pizza*, No. 3:21-cv-00266, 2022 U.S. Dist. LEXIS 21838, at *3 (M.D. Tenn. Jan. 19, 2022).

inquiries, administration issues, and other post-approval matters." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19. This further supports a lodestar cross-check in this case.

In addition to the many hours worked on this particular case, Biller & Kimble have also worked many thousands of hours developing substantial expertise in wage and hour cases throughout the country, which have informed and enhanced their representation of Plaintiff in this case. *See Mullins*, 2019 U.S. Dist. LEXIS 11019, 2019 WL 275711, at *5 (discussing Biller & Kimble's substantial experience in federal courts and class action litigation); *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 U.S. Dist. LEXIS 170579, at *18 (S.D. Ohio Oct. 3, 2018) (noting class counsel's "substantial experience in wage-and-hour litigation"). This work "substantially enhanced" the result that class counsel was able to achieve here. *See Arp*, 2020 U.S. Dist. LEXIS 207512, at *21 (noting that is proper to consider work on similar cases in considering lodestar crosscheck)

As such, the lodestar multiplier of 1.66 is reasonable and falls safely within the acceptable range. *See Lowther v. AK Steel Corp.*, No. 1:11-cv-877,2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19 (approving lodestar multiplier of 5.29). "[G]iven the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis. This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate. The Court notes that the employer-defendant was represented by highly competent and skilled counsel. Employee-plaintiffs require equally proficient representation." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *20.

Fifth, as discussed throughout this Motion, wage and hour class/collective actions are "inherently complex." *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *5. This factor supports approval

18

of the requested fee award. This case involved novel and complex factual scenarios and issues of law. As mentioned above this is a particularly complex case that involves Defendants 17 restaurants and hundreds of class members. The complexity involved in navigating this action supports the requested fee award.

Sixth, both the class and Defendants are represented by skilled and experienced counsel. As noted above, Class Counsel has substantial experience with FLSA and wage and hour litigation. Defendants' counsel likewise are experienced employment litigators. This factor supports the requested fee award.

Since all the *Ramey* factors support the requested fee award, Plaintiff requests the Court award class counsel 1/3 of the settlement fund as attorneys' fees.

### 6.3. Class Counsel's request for reimbursement of advanced litigation expenses and the administration expenses should be approved.

Class Counsel also seeks reimbursement of advanced litigation expenses and administration costs. *See* 29 U.S.C. § 216(b); Fed. R. Civ. P. 23(h). In this case, Class Counsel has incurred a total of $7,957.65 in litigation costs and expenses, all of which Class Counsel advanced. *See* Biller Decl., ¶15. These costs relate to the filing fee, mediation fees, service of process costs, and the costs relating to sending notice for collective action certification purposes. Plaintiffs' litigation costs and expenses fairly limited and are reasonable for this type of case.

In addition to the amount of litigation expenses, Class Counsel also asks that the Court approve the costs related to administering the settlement and sending notice to the class members. This amount is $14,452.00. This covers the claims administrator's fees to send the settlement notice, calculating payments, distributing checks, and otherwise administering the settlement. This amount is reasonable and should be approved.

**7. The incentive payment is reasonable, and similar payments are routinely awarded.**

Finally, Plaintiff requests a $10,000 incentive/service award for herself. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation); *see also Neal v. Hallsons of Leb., Inc.*, No. 1:20-cv-00672, 2022 U.S. Dist. LEXIS 42664, at *5 (S.D. Ohio Mar. 2, 2022) (approving an incentive award to a class representative for the risk involved in being a class representative to future employment). In the context of wage and hour cases, incentive awards help further the public policies underlying laws like the Fair Labor Standards Act. *Dillow v. Home Care Network, Inc.*, 2018 U.S. Dist. LEXIS 170579, at *20 (S.D. Ohio Oct. 3, 2018). Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *21.

The settlement agreement earmarks $10,000 to Plaintiff for her work in bringing and prosecuting the case on behalf of other servers at Defendants' 17 restaurants. Plaintiff decided to bring this case not just on behalf of herself, but also for the benefit of more than 700 other tipped workers in Ohio. Plaintiff was a current employee at the time she filed this lawsuit. She undertook this lawsuit knowing that it could have potentially negative implications for her employment with Defendants and her employment elsewhere. In addition to taking on this personal risk, Plaintiff

spent substantial time and effort working with Class Counsel during this case. Plaintiff attended mediation and was instrumental in reviewing and processing discovery provided by Defendants. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred. Plaintiff asks the Court to approve the service fee award of $10,000. The $10,000 incentive award is in line with amounts awarded in similar cases. *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *22 (awarding $10,000 incentive award); *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *16-17 (same); *Mullins*, 2019 U.S. Dist. LEXIS 11019, at *16-17 (same); *McConnell*, 2021 U.S. Dist. LEXIS 97576, at *21-22 (same); *Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, at *222-24 (S.D. Ohio Nov. 5, 2020) (same); *Casteel v. Antonio's Pizza, Inc.*, No. 1:18- cv-1277, Doc. 52 (N.D. Ohio May 17, 2019) (same); *See also Dorn v. Eddington Sec., Inc.,* No. 08 Civ. 10271(LTS), 2011 U.S. Dist. LEXIS 156546, at *19  (S.D.N.Y. Sept. 21, 2011) (finding service award of $10,000 to the plaintiffs in a FLSA and state law wage class action was reasonable, stating "such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.")

**8. Conclusion**

In light of the foregoing, Plaintiff asks the Court to enter an Order:

(1) granting final approval of the settlement;

(2) certifying this case as a Rule 23 class and FLSA collective class for settlement purposes;

(3) approving Class Counsel's request for attorney's fees and costs;

(4) approving the Claims Administrator's costs; and

(5) approving the service award to Plaintiff;  and

(6) ordering the parties to otherwise carry out the settlement agreement according to its terms.

To facilitate administering and completing the settlement process, Plaintiffs ask that the Court retain jurisdiction over the settlement.

Respectfully submitted,

/s/ Andrew Biller
Andrew R. Biller (Ohio Bar # 0081452)
Biller & Kimble, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
abiller@billerkimble.com

Andrew P. Kimble (Ohio Bar # 0093172)
Samuel D. Elswick Jr. (Ohio Bar #0100327)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 452-3568
Facsimile: (614) 340-4620
akimble@billerkimble.com
selswick@billerkimble.com

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

**<u>Certificate of Service</u>**

The undersigned hereby certifies that the foregoing was filed through the Court's ECF

system and Defendants will receive a copy.


<u>/s/ Andrew Biller</u>
Andrew R. Biller