# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| Kelsey Smith, *On behalf of herself and those similarly situated*, Plaintiff, v. Local Cantina, LLC, *et al.*, Defendants. | Case 2:20-cv-03064 Judge James L. Graham Magistrate Judge Kimberly A. Jolson |

### Order Granting Plaintiff's Unopposed Motion for Final Settlement Approval

Before the Court is Plaintiffs' Unopposed Motion for Final Settlement Approval. The Court has reviewed Plaintiffs' Motion (Doc. 60) and Plaintiffs' Supplemental Declaration (Doc. 62). On April 11, 2022, the Court conducted a Final Fairness Hearing. For the reasons stated in this Order, the Court **GRANTS** Plaintiffs' Motion (Doc. 60).

1. **Background**

This is a wage and hour lawsuit brought on behalf of a class of approximately 800 restaurant workers at 17 Local Cantina restaurants. Plaintiff Kelsey Smith filed this lawsuit on June 15, 2020 as a putative class and collective action. Doc. 1. Plaintiff alleges several wage and hour violations arising from Defendants' pay practices.

First, Plaintiff claims that, from approximately March 17, 2020 to June 22, 2020, Defendants retained all employee tips. Plaintiff contends that Defendants retained approximately $510,000 in tips. The Fair Labor Standards Act and the Ohio Minimum Wage Amendment prohibit

employers from retaining employee tips. *See* 29 U.S.C. 203(m)(2)(B); Ohio Const. Art. II, Sec. 34a.

Defendants respond in two primary ways. First, Defendants contend that, under the unique circumstances of this case, they were either permitted to retain the tips or, at a minimum, did not do so willfully. Defendants point to the fact that, during the three-month period in question, they paid far in excess of the minimum wage. Second, even if liable, Defendants dispute Plaintiff's calculation of unpaid wages. Defendants contend that, at most, only $300,000 to $350,000 in tips were retained.

Second, Plaintiff alleges that Defendants miscalculated their overtime rate during the period before and after the three-month period described above. Specifically, Plaintiff alleges that Defendants paid one-and-a-half times the employees' tipped wage rate. Plaintiff calculates that Defendants underpaid overtime wages by about $35,000.

Both the FLSA and Ohio's overtime law require employers to pay tipped workers one-and-a-half times full minimum wage for overtime hours, rather than using the tipped minimum wage rate as the worker's "regular rate." 29 U.S.C. 207(a); O.R.C. 4111.03(A). Under federal law, employers may still claim a tip credit against this obligation of up to $5.12 per hour. 29 U.S.C. 203(m)(2). Under Ohio law, employers may claim a tip credit of up to half of full minimum wage. Ohio Const. Art. II, Sec. 34a.

Defendants contend that they had a good faith and reasonable basis for paying overtime at the rate at which they did. Moreover, Defendants argue that Plaintiff overestimates the possible unpaid wages and that Defendants' records would demonstrate a lesser amount of unpaid wages, if any.

Third, Plaintiff alleges that Defendants retained tips from customer orders placed online. Plaintiff contends that employee testimony supports this claim. Plaintiff concedes, however, that Defendants' records do not appear to support this claim. Defendants contend that they did not retain tip money from online orders.

Plaintiff brings her claims under the FLSA, the Ohio Minimum Wage Amendment, and for the overtime claim, the Ohio Minimum Fair Wage Standards Act. In addition, Plaintiff asserts a claim under Ohio's Prompt Pay Act (O.R.C. § 4113.15) and O.R.C. § 2307.60.

The Ohio Prompt Pay Act encompasses two types of claims. First, courts have repeatedly held that a violation of any other wage statute (like the FLSA) necessarily triggers a failure to timely pay wages under the Prompt Pay Act. *See Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016); *see also Estate of McConnell v. EUBA Corp.*, 2021 U.S. Dist. LEXIS 97576, at *4 (S.D. Ohio May 24, 2021). In other words, the Prompt Pay Act requires employers to timely pay wages owed for any reason, whether statutory or otherwise. *Id.* Second, the Ohio Prompt Pay Act allows an employee to recover liquidated damages, but only if the wages due are not in dispute. O.R.C. 4113.15(B). Defendants contend that, here, the wages at issue are in dispute. If Defendants prevailed on this issue, the Prompt Pay Act would allow only for the recovery of unpaid wages if Plaintiff could prove a violation of the FLSA, Ohio Minimum Wage Amendment, or the Ohio Minimum Fair Wage Standards Act. *Id.* As above, Defendants dispute that Plaintiff has a viable, underlying wage claim.

Ohio Revised Code Section 2307.60 imposes civil liability for a criminal act. A willful violation of the FLSA is a criminal act. 29 U.S.C. 216(a). As above, Defendants contend that, to the extent there is liability at all, they did not act willfully. If Defendants prevailed on this argument, they would not be liable under O.R.C. § 2307.60. On the other hand, if Plaintiff

prevailed in proving a willful violation of the FLSA, then O.R.C. § 2307.60 would impose additional damages on Defendants, including punitive damages. O.R.C. 2307.60(A)(1).

2. **The Settlement Agreement**

The parties' Settlement Agreement creates a settlement fund of $630,000, inclusive of attorney's fees, expenses, claims administration fees, and services awards. Under the terms of the Settlement Agreement, each class member who worked for Defendants between June 15, 2017 and July 29, 2020 will have a check mailed to them in the amount of their share of the settlement fund. In exchange, the Agreement provides that class members will release Defendants, Defendant's restaurants and the Released Parties from:

> all claims for all claims for alleged unlawful retention of employee tips from March 17, 2020 to June 22, 2020; all claims for alleged unpaid overtime wages for hours worked from March 17, 2020 to June 22, 2020; all claims for alleged unpaid overtime wages for hours worked from June 15, 2017 to March 16, 2020 and from June 23, 2020 to July 29, 2020; and all claims for misappropriated tips or tip credit differential arising from the allegation that Defendants unlawfully retained employee tips left on online to-go orders from June 15, 2017 to March 16, 2020 and from June 23, 2020 to July 29, 2020, including any liquidated damages, statutory damages, civil damages, exemplary damages, punitive damages, penalties, interest, and attorneys' fees and expenses related thereto pursuant to the FLSA and Ohio law.

Agreement, Doc. 51-1, §5(B).

Any unclaimed funds will be redistributed to the class members, so long as each class member can receive at least $10.00. If insufficient money remains, the remainder will be distributed *cy pres* to the Restaurant Workers' Community Foundation.

3. **The Notice Process**

This case covers approximately 800 class members. Class Counsel originally sent notice by U.S. mail to 788 of the class members and emailed 762 of those individuals (*i.e.*, those for

whom Defendants had email addresses). *See* Biller Dec., Doc. 60-1, ¶10. This is an appropriate and proper notice process.

Of those to whom the notice was sent, 165 notices were returned as undeliverable. *Id.* The claims administrator performed skip tracing to uncover 141 additional addresses. *Id.* Ultimately, only 36 class members' notices were undeliverable. *Id.* This is an excellent result and provided proper notice to the class members.

On March 25, 2022, the parties brought to the Court's attention that 23 class members' names and addresses were inadvertently left off the class list. The Court instructed the parties to use all reasonable efforts to contact those individuals to ascertain their intentions with respect to the settlement.

According to Plaintiff's counsel, counsel were able to mail or email all 23 of the class members and spoke to 12 by phone. Elswick Dec., Doc. 62. Counsel stated that no one indicated an intent to opt out or object. Under the circumstances, and considering the limited amount of people affected, the Court finds that this supplemental notice processes was appropriate and satisfies Rule 23.

4. **Analysis of the Settlement**

At the final stage of settlement approval, the Court considers seven factors: (1) the risk of fraud or collusion, (2) the litigation's complexity, expense, and likely duration, (3) the amount of discovery that the parties conducted, (4) the likelihood of success on the merits, (5) the opinions of class counsel and class representatives, (6) class members' reactions, and (7) the public interest. *Doe v. Déjà Vu Consulting, Inc.*, 925 F. 3d 886, 894–95 (6th Cir. 2019). Each factor in this case supports approving the settlement.

a. **Probability of Success on the Merits**

The most important factor in considering approving a settlement is the plaintiffs' likelihood of success on the merits. *Déjà Vu Consulting, Inc.*, 925 F. 3d at 895. As discussed above, both parties were prepared to litigate the numerous legal and factual issues in this lawsuit. Defendants intended to dispute not only liability itself but the measure of damages, class certification, and whether Plaintiff was entitled to additional damages (like liquidated damages or punitive damages).

In evaluating a settlement, the Court is not required to opine on each of the claims and defenses, but, rather whether a legitimate dispute exists as to the claims. Here, there is certainly a dispute as to the claims.

The Court next measures the case's results against the disputed issues. Under any measure, the settlement is fair, reasonable, and adequate. Based on Plaintiff's calculations, assuming Plaintiff proved liability, the settlement is somewhat higher than the unpaid wages at issue. Based on Defendants' calculations, again, assuming Plaintiff proved liability, the settlement is about twice the amount of unpaid wages at issue. Either way, this is an excellent result for the class, considering that other courts have found as little as 5.2% to 33% of a claim's value to be fair and reasonable. *See, e.g., Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016; *Dillworth v. Case Farms Processing, Inc.*, 2010 U.S. Dist. LEXIS 20446, *20 (N.D. Ohio Mar. 8, 2010).

b. **The Risk of Fraud or Collusion**

Here, there is no evidence of fraud or collusion. The settlement has every indication of being reached through arm's length negotiations, facilitated in part by a professional mediator. The ultimate settlement amount, method of fund distribution whereby all class members will receive a

6

check, lack of reversion, typical attorney's fee award (one-third of the fund), and typical service award all support finding that this settlement did not result from fraud or collusion.

### c. The Litigation's Complexity, Expense, and Likely Duration

Wage and hour litigation is inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). This case is no exception. The case involved seventeen restaurants, hundreds of employees, multiple legal claims, theories, and defenses, and the complexity of a hybrid class and collective action.

The case's complexity weighs in favor of approving the settlement. The case's complexity not only added risk that Plaintiff would not succeed in the first place, but it also increases the time it takes to bring a case to judgment and ultimate payment if Plaintiff does succeed. The settlement resolves the case without any further time or resources from either the parties or the Court.

### d. The Amount of Discovery

As with many Fair Labor Standards Act cases, this case largely turns on the employer's records. Here, Defendants provided comprehensive payroll records for the period covering most alleged unpaid wages. Defendants also provided a sampling of payroll records for the other time periods. The Court finds that this is sufficient for the parties to properly evaluate the case for settlement purposes.

### e. The Opinion of Class Counsel and the Class Representative

Class Counsel expressed support for the settlement in both filings and at the Fairness Hearing. Plaintiff was present at the Fairness Hearing and supported the settlement.

### f. The Class Members' Reactions

No class member objected or opted out of the settlement. A singled opt-in plaintiff attended the hearing. That class member did not express any opposition to the settlement. The Court asked

Class Counsel about the class's reactions, and Class Counsel indicated that the reaction to the settlement has been overwhelmingly positive.

### g. The Public Interest

The public has an interest in resolving complex class actions, which require significant Court resources that could be allocated to other matters. Moreover, the public has an interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages. Both weigh in favor of approving the settlement. *See, e.g., Mullins v. Data Mgt. Co.*, 2021 U.S. Dist. LEXIS 124891, at *16 (S.D. Ohio June 21, 2021).

### h. Conclusion Regarding Settlement Approval

Having analyzed the settlement, considered the relevant factors, and conducted a fairness hearing, the Court finds that the class settlement in this case is fair, adequate, and reasonable. The Court approves the settlement as agreed to by the parties. The Court will retain continuing jurisdiction to enforce the Agreement's terms.

## 5. Attorney's Fees and Expenses

Class Counsel also asks that the Court award them attorney's fees and expenses incurred during the litigation. The Court turns to the fee request first.

Class Counsel seeks an award of $210,000 in attorney's fees, which is one-third of the settlement fund. The Court must first determine under which method to award fees—lodestar or percentage-of-the-fund. The Court must then determine the amount of the fees.

Courts in this district "prefer the percentage-of-the-fund method" for awarding fees in FLSA cases, unless there are "compelling reasons to the contrary." *Waters v. Pizza to You, LLC*, 2022 U.S. Dist. LEXIS 26005, at *10 (S.D. Ohio Feb. 9, 2022). The "percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class."

*McConnel*, 2021 U.S. Dist. LEXIS 97576, at *15. The Court sees no reason to deviate from the norm in this case and adopts the percentage-of-the-fund method.

Courts in this district regularly award one-third of the common fund in FLSA cases. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371, *14 (S.D. Ohio Nov. 25, 2019. Again, this case presents no reason to deviate from typical fee awards in this district.

Finally, courts consider six factors when evaluating fee awards: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *11; *citing Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). In evaluating these factors, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *McConnell*, 2021 U.S. Dist. LEXIS 97576, at *17.

a. **The Value of the Benefits Rendered to the Class**

The Court has already discussed the settlement in terms of the result relative to the risks going forward with the litigation. Through Class Counsel's work, class members will receive a substantial award that they would not have received but for Class Counsel's work and willingness to take on the class's cause. It is therefore equitable that the class compensate Class Counsel for their work, risk, and investment.

### b. Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others

The Supreme Court has repeatedly held that FLSA rights are so important as to be wholly non-waivable. *See, e.g., Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). A strong public policy exists to compensate lawyers who take on these cases—typically on behalf of low-wage workers with few resources and against well-funded employers. These cases entail substantial risk, time, effort, and expertise to successfully litigate. It is therefore important that the lawyers who assume this type of representation be compensated in a way that is commensurate with the resources required to do so. To do otherwise would undermine Congress's goal of encouraging private enforcement of FLSA rights.

### c. Whether the Services Were Undertaken on a Contingent Fee Basis

Here, Class Counsel took on the case on a contingent fee basis. This supports the proposed fee award.

### d. The Value of the Services on an Hourly Basis (the Lodestar Cross-Check)

Although it is not required, courts in this district often measure Class Counsel's proposed award against their lodestar. *Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, *22-24 (S.D. Ohio Nov. 5, 2020). In doing so, however, courts should not 'become green-eyeshade accountants[,]' but instead must content themselves with 'rough justice[.]" *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021).

Class Counsel has provided the Court with a chart outlining the hourly rates and hours spent by timekeeper. The hourly rates listed—$550 to $600 for the partners (Biller and Kimble), $250 to $350 for the associates (Elswick, Kane, Krzeski, Spencer, and Blankenship), and $150 for paralegals—are reasonable considering Class Counsel's experience and track record of success in

wage and hour litigation. *See Mullins*, 2019 U.S. Dist. LEXIS 11019, 2019 WL 275711, at *5 (discussing Biller & Kimble's substantial experience in federal courts and class action litigation); *Dillow v. Home Care Network, Inc.*, 2018 U.S. Dist. LEXIS 170579, *18 (S.D. Ohio Oct. 3, 2018) (noting class counsel's "substantial experience in wage-and-hour litigation"). These rates have been approved for these timekeepers in other cases. *See, e.g., Neal v. Hallsons of Leb. Inc.*, 2022 U.S. Dist. LEXIS 42664, at *3 (S.D. Ohio Mar. 2, 2022), citing *Arp*, 2020 U.S. Dist. LEXIS 207512, at *20.

As to the hours expended, following the Sixth Circuit's instructions in *Rembert* to "content [itself] with 'rough justice,'" the Court need not conduct a line-by-line examination of billing records. *Rembert*, 986 F.3d at 618. Rather, the Court can use its experience with these types of cases to evaluate the hours expended. Here, the hours expended appear reasonable and result in a total lodestar of $126,755 at an average billing rate of $286 per hour.

Overall, this results in a lodestar multiplier of 1.66. Even if the Court were to consider only half of the lodestar to be reasonable here, the resulting multiplier (3.32) is well within range of acceptable multipliers. *See Lowther v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 181476, *18–19 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19 (approving lodestar multiplier of 5.29). "[G]iven the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis. This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate. The Court notes that the employer-defendant was represented by highly competent and skilled counsel. Employee-

plaintiffs require equally proficient representation." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *20.

   e. **The Complexity of the Litigation**

At the Court discussed above, wage and hour actions are generally complex, time-consuming, and risky cases. As this case demonstrates, such cases often raise complex legal issues involving the changing landscape of federal and state law, regulations, agency guidance, and case law. This complexity requires competent counsel on both sides to properly litigate, justifying an increased range of reasonable fees.

   f. **The Professional Skill and Standing of Counsel on Both Sides**

The professional skill and standing of counsel on both sides of this case support the proposed fee award.

Plaintiff and the class are represented by lawyers from Biller & Kimble, LLC, including the partners, Andrew Biller and Andrew Kimble. The firm is focused on representing workers in wage and hour lawsuits. https://www.billerkimble.com/. Courts in this district have recognized the firm's skill, reputation, and success in this practice area. *See, e.g., Mullins*, 2021 U.S. Dist. LEXIS 124891, at *19. This Court agrees that the firm's lawyers' skill and experience in wage litigation benefited the class and support the fees requested.

Defendants are represented by Michele Jakubs from Zashin & Rich and Charles Ticknor from Dinsmore & Shohl, LLP. Attorney Jakubs is an experienced and skilled federal litigator. http://zrlaw.com/attorney_mlj.html. She is an OSBA certified specialist in Labor and Employment Law and has substantial experience in wage and hour litigation. *Id.* Attorney Ticknor is a partner at his firm. https://www.dinsmore.com/charles-e-ticknor-iii/. He has over three decades of experience, which includes litigation and dispute resolution in front of federal and state courts. *Id.*

Like, Attorney Jakubs, Attorney Ticknor is a skilled litigator in the federal courts. The skill, experience, and professional reputation of Defendants' counsel further justifies that Plaintiff likewise required competent counsel to bring this lawsuit, thereby supporting the fee award.

### g. Conclusion Regarding Attorney's Fee Award

Having considered the relevant factors, the Court GRANTS Class Counsel's request for a percentage-of-the-fund award of one-third. The Court awards counsel with $210,000 in attorney's fees.

### h. Requested Expenses

Class Counsel also asks that the Court award them an amount to reimburse them for their out-of-pocket litigation expenses. The expenses total $7,957.65. The bulk of these expenses are from mediation and the notice process. The Court finds that all of the expenses are reasonable and were necessary to advance the interests of the class. Accordingly, the Court awards Class Counsel with reimbursement of the requested expenses.

Class Counsel additionally asks the Court to authorize payment of the claims administrator's fees of $14,452. This covers the administrator's fees to send the settlement notice, calculate payments, distribute checks, and otherwise administer the settlement. This request is reasonable and is also granted.

### i. Service Award

Finally, Plaintiff requests a $10,000 service award for advancing the class's interests. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for

13

their time and expenses incurred pursing the litigation); *see also Neal*, 2022 U.S. Dist. LEXIS 42664, at *5 (approving an incentive award to a class representative for the risk involved in being a class representative to future employment).

In the context of wage and hour cases, incentive awards help further the public policies underlying laws like the Fair Labor Standards Act. *Dillow*, 2018 U.S. Dist. LEXIS 170579, at *20. Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *21.

The $10,000 incentive award is in line with amounts awarded in similar case. *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *22 (awarding $10,000 incentive award); *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *16-17 (same); *Mullins*, 2019 U.S. Dist. LEXIS 11019, at *16-17 (same); *McConnell*, 2021 U.S. Dist. LEXIS 97576, at *21-22 (same); *Arp*, No. 3:18-cv-119, at *222-24 (same); *Casteel v. Antonio's Pizza, Inc.*, No. 1:18- cv-1277, Doc. 52 (N.D. Ohio May 17, 2019) (same); *see also Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271(LTS), 2011 U.S. Dist. LEXIS 156546, at *19 (S.D.N.Y. Sept. 21, 2011) (finding service award of $10,000 to the plaintiffs in a FLSA and state law wage class action was reasonable, stating "such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs."). Accordingly, the Court grants Plaintiff's request.

### 6. Conclusion

In light of the foregoing, the Court GRANTS Plaintiff's Motion for Final Settlement Approval. To that end, the Court:

(1) grants final approval of the settlement;

(2) approves Class Counsel's request for an award of attorney's fees and costs;

(3) approves Class Counsel's request for an award of the administrator's fees;

(4) approves Plaintiff's request for a service award;

(5) orders the parties to otherwise carry out the settlement agreement according to its terms.

The Court will retain continuing jurisdiction to facilitate completion of and compliance with the Settlement Agreement.

IT IS SO ORDERED, this   19th   day of   April  , 2022.

/s/ James L. Graham
**James L. Graham, United States District Judge**